IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**ERIN CHRISTINE BENEK,**

    Plaintiff,

v.

**COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

No. 6:15-cv-00616-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Erin Christine Benek ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") under Title XVI and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This court has jurisdiction under 42 U.S.C. §§

Page 1 - OPINION AND ORDER

405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, that decision is **AFFIRMED** and this matter is dismissed.

## BACKGROUND

Plaintiff was born on September 16, 1972, and was 41 years old at the time of the hearing. Tr. 197. She has a high school education, and has worked as a general clerk, a cashier, a hotel clerk, and a sandwich maker.

Plaintiff protectively filed applications for disability benefits on March 16, 2012, alleging disability due to "fibromyalgia, myositis, connective tissue disease, bilateral leg edema, subluxed rib." Tr. 249. The Commissioner denied her applications initially and upon reconsideration. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 5, 2013. Tr. 40-78. On December 9, 2013, the ALJ found Plaintiff not disabled. Tr. 19-33. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision Tr. 1-7. Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920(SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(I). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262. F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.; see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ applied the sequential process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since her amended onset date of April 5, 2010, and met the insured status requirements of the Social Security Act through September 30, 2015. Tr. 21. At step two, the ALJ found Plaintiff's fibromyalgia, chronic pain syndrome, dependent lower extremity edema, lipedema, and morbid obesity were severe impairments. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 23.

The ALJ determined that Plaintiff had the RFC to perform sedentary work but with the following limitations: she cannot climb ladders, ropes or scaffolds, and she should avoid exposure

Page 4 - OPINION AND ORDER

to extreme cold and workplace hazards. She is able to stand/walk a combined total of no more than four hours in an eight-hour workday. She cannot walk continuously for more than 90 minutes at a time. She is able to sit at least four hours in an eight-hour workday. When seated, she must be allowed to elevate one or both legs to approximately 16-18 inches. She does not need the ability to elevate her legs above the level of her heart. She can perform all other postural activities on an occasional, non-repetitive basis. She is able to engage in occasional bilateral reaching in all directions. Tr. 23. In reaching his conclusion, the ALJ considered Plaintiff's testimony, but found her not fully credible. Tr. 30. At step four, the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 32. At step five, the ALJ found there were jobs in the national economy Plaintiff can perform, including call-out addresser, call-out operator, and microfilm document processor. Tr. 32. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, through December 9, 2013.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)(quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007)(quoting *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray,* 554 F.3d at 1226.

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner,* 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## ADMINISTRATIVE RECORD

### I. Adult Function Reports

Plaintiff completed an Adult Function Report on March 16, 2012. Tr. 226-33. She stated that fibromyalgia, myositis and mixed connective tissue disease "cause me severe muscle and deep tissue pain and discomfort all day 24/7. The intensity of pain make[s] it to where I cannot function walking, sitting, bending, reaching, standing." Tr. 226. Plaintiff has worked part-time and full-time and has been laid off from every job because of absenteeism. Bilateral leg edema causes her legs to swell and she cannot fit into her shoes or clothes, and she does not know when the episodes will

Page 6 - OPINION AND ORDER

occur. A subluxed rib causes "severe pain, tenderness, shortness of breath, breathing problems, chest tightness and any activity, range of motion caused severe discomfort. I could not sleep due to the discomfort." Tr. 233.

She has trouble falling asleep and pain wakes her up. She naps daily for one to two hours. The edema makes her urinate three times an hour 24 hours a day. Tr. 227. Plaintiff rests between and during chores like laundry, making her bed, emptying or loading the dishwasher, and washing dishes by hand. She prepares simple meals daily and it takes one to three hours with rest periods. Tr. 228. Doing laundry takes about four hours three times a week. Light cleaning takes all day with rest periods. She does light cleaning every two to three weeks. She leaves the house about once a week to grocery shop, which takes two to four hours because of fatigue, weakness, pain, light headedness, and discomfort. Tr. 229. She does some paper crafts, listens to music, watches television, and uses the internet. She has no social activities

Plaintiff can lift five pounds. Her legs "fall asleep and tingle" with squatting, bending, sitting and kneeling. Her legs tire after standing five to ten minutes, reaching causes arm pain, and she tires after walking half a block or one aisle in the grocery store. Tr. 231. She has trouble completing tasks due to insomnia and decreased focus. She can walk for ten to 15 minutes at a slow pace and then rests for 20 to 30 minutes. In March 2005 she was prescribed compression stockings which she wears when edema is present.

Plaintiff completed a second Adult Function Report on May 2, 2012. Tr. 272-79. Plaintiff repeated the descriptions of her limitations set out in the March 2012 Report, and additionally stated:

> The intensity of pain i.e. burning, aching, gnawing, soreness make it difficult to walk for long periods 8 hr day, sitting at a desk for 8 hrs, bending stooping, squatting, reaching standing repeatedly all

Page 7 - OPINION AND ORDER

> cause physical distress. My legs and feet start to fall asleep, go numb after 5-10 minutes sitting. At times my hands and wrists start to go numb during normal daily activities. . . . I don't sleep but 2 hrs at a time. Having edema (water retention) makes it to where I use the bathroom hourly and that interferes with work along with lack of sleep. . . . Somedays my fatigue and weakness make it to where I cannot get up and shower and I rest all day or try to elevate my legs to get the swelling down.

Tr. 272-73.

Plaintiff's hobbies are making crafts and art projects, watching television, listening to music, going to the coast, and day car trips. Tr. 276. She was living temporarily with her mother, and they go on short walks in the neighborhood a "couple of times a week." *Id.* Plaintiff had no social activities. She loses her balance and the feeling in her legs when squatting and kneeling. Bending causes leg cramps and back pain. Standing causes fatigue, and her hands become painful, tired and crampy when reaching. Pain interferes with concentration at times.

## II. Testimony

Plaintiff and a vocational expert (VE) testified at the November 2013 hearing. Plaintiff was represented by counsel. Plaintiff amended her alleged onset date from September 1, 2003 to April 5, 2010. Tr. 44.

Plaintiff testified she last worked at the Oregon Coast Aquarium in April 2010. Tr. 48. She was let go due to excessive absenteeism arising from her health issues. Tr. 49. She was absent because:

> With that job I had to stand a lot on gravel, cement hard floors and standing all day would make my legs tire and swell and the conditions at the Oregon Coast Aquarium, the weather also played a factor. It was cold a lot and that fatigued me and my stamina just was lowered with the cold and having to stand all day on that concrete floor. At times they did let me sit on a stool but not much.

Page 8 - OPINION AND ORDER

Tr. 49.

Plaintiff applied for and received unemployment compensation from May or June 2011 until March 2012. Tr. 54. She applied for work online while on unemployment, spending "about four to six hours a day every day." Tr. 51. She reported to the unemployment office that she was ready, willing, and able to work. Most of the jobs she applied for were clerical because Plaintiff did not believe she was capable of working a retail position. At the time of the hearing Plaintiff was working with vocational rehabilitation and looking for part-time work. She moves every nine to twelve months to live with family members, in return for which she does household chores and pet care. The chores take an hour to an hour and a half with a ten to fifteen minute break. Tr. 56, 64.

Plaintiff is able to stand for one to two hours, and walk non-stop for 60 to 90 minutes. Plaintiff did not complete prescribed physical therapy because she moved. She agrees with her treating physician's opinion that if she engaged in significant weight loss, regular exercise, and wore her compression stockings she could significantly improve her condition. Tr. 57-58. The compression stockings help alleviate the swelling and some of the pain. Plaintiff walks a couple of times a week for about 15 minutes but it is harder to walk or exercise when her legs are swollen. Plaintiff is working with a dietician to improve her diet and has considered water exercises. She does some exercise in her mother's hot tub about once a month.

Plaintiff testified she had lost ten pounds since February, a period of nine months. If offered a full-time job she would try to do it. Tr. 61. Plaintiff was let go from Good Samaritan Hospital in Corvallis for excessive absenteeism when she had edema. Tr. 62. She has edema about once every three weeks, and it can last for two weeks. It happens randomly. When she has edema

Page 9 - OPINION AND ORDER

Plaintiff rests, elevates her legs, and reduces her salt consumption. She elevates her legs for a period of four to eight hours per day to prevent edema.

Plaintiff has pain from her neck and shoulders to her hands, through her torso, hips, and down to her ankles. Tr. 64. The pain is constant, and aggravated by bending, household chores, twisting, reaching and driving. Tr. 65. She could not hold a full-time clerical position because "I would fatigue and my stamina would not last. Through an eight-hour day, my pain level gets worse and worse through sitting, through standing, getting up in and out of chairs, having to lift anything, having to load, like, a copy machine or something that adds to my pain level." Tr. 66. Her treating physician has not advised her to exercise, although other doctors have told her regular exercise can help fibromyalgia. Tr. 68.

### III. Medical Records

The medical records are extensive, and the parties are familiar with them. Therefore they will be set out below when relevant.

### DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to find depression a severe impairment at step two; (2) improperly finding her less than fully credible; (3) improperly weighing the medical evidence; and (4) improperly formulating her RFC. Because the first three issues are dispositive, the court need not address the fourth issue.

### I. Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Yuckert,* 482 U.S. at 140-41. The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of

Page 10 - OPINION AND ORDER

what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

The ALJ properly determined that Plaintiff had severe impairments at step two and continued the analysis. Any error in failing to identify other limitations as "severe" at step two is therefore harmless. Moreover Plaintiff does not identify functional limitations arising out of depression, and she did not testify to any limitations arising out of depression.

## II. Credibility of Plaintiff's Testimony

Plaintiff contends the ALJ erred when she found Plaintiff's testimony was not fully credible. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008). The ALJ's findings, however, must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). *See also Holohan*

*v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001). Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id.* The evidence on which the ALJ relies must be substantial. *Id.* at 724. *See also Holohan,* 246 F.3d at 1208. General findings (*e.g.*, "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

When deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based
> on subjective symptoms "must produce objective medical evidence
> of an underlying impairment which could reasonably be
> expected to produce the pain or other symptoms alleged."
> *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)
> (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes
> only two requirements on the claimant:(l) she must produce
> objective medical evidence of an impairment or impairments;
> and (2) she must show that the impairment or combination of
> impairments *could reasonably be expected to* (not that it did in
> fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282. *See also Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

Page 12 - OPINION AND ORDER

The ALJ found Plaintiff's symptom testimony "not entirely credible." Tr. 30. The ALJ noted Plaintiff's testimony regarding her receipt of unemployment benefits between mid-2010 and March 2012. Tr. 29-30, 215. The receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time, when the claimant has held herself out as available for full-time work. *Carmickle*, 533 F.3d at 1161-62. Plaintiff testified she preferred part-time work, but she applied for full-time work "because I thought I could." Tr. 29, 52, 56.

Inconsistent statements can undermine credibility. SSR 96-7p, at *5. Plaintiff testified that "when I was drawing unemployment . . .I was job searching on the computer for probably four to six hours a day every single day." Tr. 51.

Plaintiff testified she could stand for one to two hours, and could walk non-stop for 60 to 90 minutes. Tr. 56-57. But in her March 2012 Function Report, Plaintiff stated she could walk for 10 to 15 minutes before needing to stop and rest. Tr. 231.

The ALJ noted Plaintiff made inconsistent statements about her symptoms and limitations. Plaintiff told treating physician Julia Sunkomat, M.D., that recent lower extremity edema had improved with elevating her legs. Tr. 711. However, Plaintiff told cconsulting physician Craig Seidman, M.D., that her legs "don't respond well to elevation." Tr. 746.

The ALJ found non-compliance with treatment detracted from Plaintiff's credibility. Tr. 30. An ALJ may rely on an unexplained or inadequately explained failure to follow prescribed treatment when finding a claimant less than fully credible. *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cri. 2012)(citing SSR 96-7p). In January 2013 Plaintiff was advised to wear compression stockings. Tr. 715. The following month she was advised to wear the compression stockings at all times in order to prevent swelling. Tr. 748. In October 2013 Plaintiff admitted she did not wear the stockings all

the time, but that they did work when she wore them. Tr. 756. Plaintiff testified that the compression stockings alleviated her swelling and some of her pain symptoms. Tr. 58. Because Plaintiff did not explain her inconsistent use of compression stockings, the ALJ reasonably discounted her credibility as to the severity of her symptoms.

The ALJ found drug seeking behavior detracted from Plaintiff's credibility. Tr. 30. In November 2010 Plaintiff sought to establish care with Keri Erland, M.D. Tr. 411 Plaintiff complained of severe discomfort and "really would like a narcotic type medication, although she does admit that they are not particularly effective." *Id.* On examination, she appeared in no significant distress. Tr. 412. Dr. Erland declined to prescribe narcotics, adding that "I could tell she was put off by this." Tr. 413. Dr. Erland advised Plaintiff methadone was not a safe drug, and told her to follow up in a few weeks. There is no evidence Plaintiff saw Dr. Erland again.

Plaintiff's edema was increased by the use of opiates. Despite knowing this, Plaintiff requested methadone in February 2012. Tr. 471. The request was denied because of the likelihood of fluid retention. Tr. 502. In March 2012 Plaintiff obtained methadone and her ankles swelled. Tr. 496. She exhausted a prescription of Oxycodone ahead of schedule in September 2012, causing treating physician John Latovsky M.D., to ask Plaintiff to bring in all her pill bottles. Plaintiff did not comply with that request, and Dr. Latovsky stated "I have concerns about compliance." Tr. 702. In November 2012 Dr. Latovsky told Plaintiff to return in 60 days or he would no longer manage her medications or provide refills. Dr. Latovsky said Plaintiff "does seem overly obsessive about her medications . . .[s]he did ask several times if we could increase the oxycodone. . . ." Tr. 721.

Medical evidence is a relevant factor in determining the severity of a claimant's pain. *See* 20 C.F.R. §§404.1529(c)(2), 416.929(c)(2). Plaintiff testified that she spent most of her time lying

Page 14 - OPINION AND ORDER

down in bed. Tr. 63. But there were no documented findings of muscle wasting or atrophy. To the contrary, Plaintiff consistently had normal muscle tone and strength. Tr. 613, 620, 748. Because examination findings did not support Plaintiff's allegations of extreme inactivity, the ALJ properly discounted Plaintiff's credibility.

The ALJ provided clear and convincing reasons to discount Plaintiff's credibility and that determination is supported by substantial evidence.

## III. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn*, 495 F.3d at 632. In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n. 2. The ALJ may reject

physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. James Morris, M.D.

Dr. Morris conducted a pain consultation in March 2012. Tr. 483-90. Plaintiff described pain "all over" as "sore, aching, constant, deep [and] burning," at an eight out of ten every day. Tr. 483. The pain began when Plaintiff was 29. Plaintiff reported the pain was continuous and not affected by activities, and increased with bending, twisting, sitting more than 15-30 minutes, standing more than 15 minutes, and walking more than 15-30 minutes.

Dr. Morris reviewed records from Julie Sunkomat, M.D., William Hinz, M.D., and Vincent J. Gimino, M.D. Tr. 484. Plaintiff took Tramadol, 50 millegram tablets, six to eight tablets daily, and Oxycodone Hydrochloride five milligram tablets, three times daily, for pain. Tr. 485. Plaintiff reported sleeping about one hour at night.

Dr. Morris noted under "social history" that Plaintiff had been unemployed for almost two years, and "she has been disabled by her condition . . . .She would like to work, but can't, and her family doesn't understand this." Tr. 486. On physical examination Dr. Morris recorded Plaintiff's body mass index at 41.8. Range of motion was limited by pain. Thirteen out of 18 trigger points were positive, and Dr. Morris diagnosed Fibromyalgia Syndrome. Dr. Morris noted "scars on her forearms most consistent with self-cutting. Patient specifically denies this . . . ." and he recommended full psychiatric evaluation. Tr. 488. Dr. Morris recommended Plaintiff stop taking Tramadol and start long acting opioids. Tr. 489. He advised Plaintiff he thought her depressed, and she should seek treatment and try Wellbutrin. Dr. Morris advised daily exercise, weight control, lidocaine patches, capsaicin cream, physical therapy and a pain psychologist. Under "Disability"

he wrote "[c]urrent condition is medically disabling. Condition is expected to be permanent but symptoms may improve with appropriate treatment over time." Tr. 492.

Dr. Morris's opinion was contradicted by the opinions of State agency psychological consultants Robert Henry, Ph.D., and Edwin Holmes, Psy. D., who both opined that Plaintiff had no limitations arising from affective or anxiety disorders. Tr. 85-86, 97-98, 113-15, 126-28. Dr. Morris's opinion is also contradicted by State agency medical consultants Michael Spackman, M.D., and Neal Berner, M.D. Tr. 87-89, 99-101, 116-17, 129-130). In May 2012 Dr. Spackman opined Plaintiff could perform light work with some postural limitations. Tr. 87-88, 99-100. In October 2012 Dr. Berner found Plaintiff capable of light work with a limitation of standing or walking for two hours in an eight-hour workday. Tr. 116-17, 129-30.

The ALJ noted Dr. Morris's report and stated the findings in the report did not include observations supporting the doctor's conclusion. Tr. 31. The ALJ noted the basis for Dr. Morris's opinion was not clear, other than Plaintiff's assertions to him that she was disabled. An ALJ my reject physician opinions that are conclusory, brief, and unsupported by clinical findings. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001); *Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004). Because Dr. Morris's report of disabling conditions was conclusory, brief, and unsupported by clinical findings, the ALJ had specific and legitimate reasons to reject the report.

### B. Julia N. Sunkomat, M.D.

Dr. Sunkomat has been Plaintiff's treating physician since November 2011. Tr. 515. On October 24, 2013, Dr. Sunkomat completed a form provided by Plaintiff's counsel in which she stated that she saw Plaintiff at least every six months for medication management for fibromyalgia

Page 17 - OPINION AND ORDER

pain and dependent lower extremity edema. Tr. 750. Dr. Sunkomat noted Plaintiff attended two physical therapy sessions before discontinuing due to moving. Dr. Sunkomat indicated Plaintiff could stand for one to two hours and sit for three to four hours, although she did not specify if these periods of standing and sitting were continuous, or whether they covered an entire eight-hour workday. Dr. Sunkomat stated Plaintiff's impairments prevent her from sitting upright for six to eight hours, and she has to lie down for unspecified periods during the day to relieve pain. Tr. 751. Dr. Sunkomat found Plaintiff credible, and the objective medical reason for her pain was obesity. To the question of whether Plaintiff could continue or resume work at current or previous employment, Dr. Sunkomat responded that "with significant weight loss, regular exercise and compression stockings patient's conditions could potentially improve significantly." Tr. 754. Dr. Sukomat asserted that Plaintiff could do work "if it was tailored to patient in terms of duration, appropriate time sitting vs standing." *Id.*

The ALJ gave "some weight" to Dr. Sunkomat's opinion. Tr. 31. The ALJ found Dr. Sunkomat's examination findings did not support the degree of limitation assessed. The ALJ also noted Dr. Sunkomat's opinion was unsupported by clinical findings. The ALJ noted Dr. Sunkomat's treatment records documented non-compliance with treatment, which was significant because Dr. Sunkomat found Plaintiff could resume working with weight loss, exercise, and use of compression stockings. Dr. Sunkomat indicated Plaintiff was capable of work that allowed her to sit and stand as necessary.

An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Batson,* 359 at 1195. The ALJ discussed a 2004 work capacity assessment in which Plaintiff was able to perform light exertional labor despite her

Page 18 - OPINION AND ORDER

longstanding impairments. Tr. 25, 396-400. The ALJ noted the remote nature of the evaluation, but gave it some weight because of the lack of significant changes in claimant's objective findings since this evaluation. Tr. 26. The ALJ cited multiple examinations in which Plaintiff had normal range of motion in all joints, full strength in all extremities, and no neurological abnormalities. Tr. 27, 487, 613-14. During the relevant period, Plaintiff had normal gait and posture, normal strength, normal movement, and normal sensation. Tr. 430, 468, 748. Multiple examinations found minimal or no edema in her legs. Tr. 430, 467, 469, 496, 502, 507, 509, 512, 516, 545, 613, 711, 748, 757. Dr. Sunkomat's physical examinations revealed normal gait and station, no acute distress, no pitting edema, and normal memory and speech. The examination findings are contrary to Dr. Sunkomat's opinion, and are a specific and legitimate reason to give it limited weight.

On this record, the ALJ gave specific and legitimate reasons for giving limited weight to the opinions of Drs. Morris and Sunkomat. The ALJ's determination is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this matter is dismissed.

Dated this ____ day of July 2016.

Mark D. Clarke
United States Magistrate Judge